UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA R. MEOLI,                           )
          Plaintiff,                       )
                                             )      No. 1:12-cv-1113
-v-                                        )
                                             )      HONORABLE PAUL L. MALONEY
HUNTINGTON NATIONAL BANK,                   )
          Defendant.                       )
_____)

## <u>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION</u>

Barton Watson ran a Ponzi scheme of sorts. Through Cyberco Holdings, Inc., Watson would secure loans from banks and other financial institutions for the purchase of servers and related computer hardware. The purported vendor for these assets was Teleservices Group, Inc., another entity associated with Watson. The banks doing business with Cyberco Holding would send the loan proceeds to Teleservices Group's account with Silicon Valley Bank in California. However, Cyberco Holdings did not actually purchase any servers and Teleservices Group did not actually sell any hardware. Watson later used the money sent to Silicon Valley Bank to make payments on prior Cyberco Holding loans and also to pay himself and others handsome salaries.

Huntington Bank was one of the financial institutions doing business with Cyberco Holdings, and Cyberco Holdings maintained its bank account at Huntington Bank. Much of the money in the Silicon Valley Bank account was funneled into Cyberco Holdings' account at Huntington Bank. In the fall of 2003, Huntington Bank realized something was not quite right with Cyberco Holdings and, in January 2004, informed Cyberco Holdings that it would need to find a new bank for its accounts. With this news, Cyberco Holdings began to pay down its multi-million dollar loan from Huntington Bank, which it

accomplished by the fall of 2004. The loan was repaid, at least in part, by direct and indirect payments from Teleservices Group's account with Silicon Valley Bank.

In January 2005, Teleservices Group filed a voluntary petition for bankruptcy under Chapter 7. Huntington Bank did not file a proof of claim in the bankruptcy proceedings. Two years later, on January 19, 2007, the Bankruptcy Trustee filed an adversary proceeding against Huntington Bank seeking to recover millions of dollars of fraudulent transfers. On June 23, 2011, the United States Supreme Court issued its opinion in *Stern v. Marshall*, 131 S.Ct. 2594 (2011.) Eight days later, during a hearing, Huntington Bank brought the holding in *Stern* to the attention of the Bankruptcy Court, which directed that a motion be filed. On July 13, 2011, Huntington Bank filed a motion requesting the Bankruptcy Court amend the portion of the Pretrial Order which stated that the Bankruptcy Court may render a final judgment in the adversary proceeding. The Bankruptcy Court granted the motion in an order issued August 17, 2011, its *Stern* Opinion, and amended the Pretrial Order to reflect that Huntington Bank had not consented to the entry of a final judgment in the adversary proceeding. Judge Hughes concluded that he would present the decisions rendered throughout the adversary proceeding to this Court as a report and recommendation.

Judge Hughes issued his Report and Recommendation on August 1, 2012. (ECF No. 1-1 Report and Recommendation.) During the course of the adversary proceeding, Judge Hughes resolved a number of motions, which are summarized in the Report and Recommendation. Judge Hughes also held two trials. For the first trial, which occurred over twelve days between November 2009 and January 2010, the parties presented their respective arguments concerning Huntington Bank's good faith defense and other related issues. Judge Hughes resolved the matters in his March 17, 2011, Bifurcated Issues Opinion. (ECF Nos.

3-1 through 3-6 Bifurcated Issues Opinion.) A second trial was held on April 30, 2012, to resolve all of the remaining issues. Judge Hughes issued his Bench Opinion for the second trial on July 23, 2012. (ECF No. 3-7 July 23, 2012, Bench Opinion.) In the Report and Recommendation, Judge Hughes recommends this Court adopt the findings of fact set forth his March 17, 2011, Bifurcated Issues Opinion and his July 23, 2012, Bench Opinion, and also recommends this Court adopt twenty-three conclusions of law. Both parties filed objections and both parties filed responses to objections. With leave of the Court, an amicus brief was filed by several banking and finance associations. The parties have also filed a number of notices of supplemental authority. A hearing occurred on September 22, 2014. With leave of the Court, both parties filed post-hearing briefs.

## I.

When a bankruptcy court determines that it is constitutionally prohibited from issuing a final judgment on a bankruptcy-related claim, the bankruptcy court should issue a report and recommendation. *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2168 (2014) (*Arkinson II*); *In re Global Technovations Inc.*, 694 F.3d 705, 722 (6th Cir. 2012) ("In those cases, the bankruptcy court may only enter proposed findings of fact and conclusions of law."). By statute and rule, when a bankruptcy court prepares a report and recommendation, it identifies findings of fact and conclusions of law that as recommendations for adoption by the district court. *See* 28 U.S.C. § 157(c)(1) (directing bankruptcy judges hearing non-core proceedings to submit proposed findings of fact and conclusions of law to the district judge); Fed. R. Bankr. P. 9033(a). The parties may then file objections which identify the specific proposed finding or conclusion and state the grounds for the objection. Fed. R. Bankr. P. 9033(b). The district court then reviews *de novo* the proposed findings of fact and conclusions of law to which the parties

have objected.  *Arkison II*, 134 S.Ct. at 2168; *see* 28 U.S.C. § 157(c)(1) (directing district courts to review the recommendations *de novo*, but only those recommendations to which "any party has timely and specifically objected."); Fed. R. Bankr. P. 9033(d).

## II.

Before addressing the objections, for context the Court provides here a brief summary of the significant findings of fact and conclusions of law.  Judge Hughes recommends this Court adopt the findings of fact set forth in the Bifurcated Issues Opinion and also in the July 23, 2012, Bench Opinion.  (Report and Recommendation at 29 Page ID 32.)  The first trial focused on Huntington Bank's good faith defense under 11 U.S.C. § 548© for the $7,395,283.04 as direct transfers and under 11 U.S.C. § 550(b)(1) for the $65,356,244.36 as indirect transfers.  In the March 17, 2011, Bifurcated Issues Opinion, Judge Hughes concluded that good faith was assessed using a subjective, rather than objective, standard.  Judge Hughes also found that Huntington Bank had established good faith with respect to transfers of funds up to April 30, 2004, but not after that date.  As part of the § 550(b)(1) defense, Judge Hughes found that Huntington Bank was without knowledge with respect to the voidability of any of the transfers it received before May 1, 2004.  However, applying the standard from *IRS v. Nordic Village, Inc.*, 915 F.2d 1049 (6th Cir. 1990), Huntington Bank was deemed to have § 550(b)(1) knowledge starting September 25, 2003.  Therefore, the court added another $22,964,383.18 as avoided transfers for which Huntington Bank could be held responsible under § 550(a)(2).

In the July 23, 2012, Bench Opinion addressing the issues in the second trial, Judge Hughes made four conclusions.  First, the total avoidable transfers for which Huntington Bank could be held accountable should be reduced from $72,751,527.40 to $72,425, 716.72.  Second, Huntington Bank was not entitled

4

to an adjustment for the Cyberco preference recoveries.  Third, Huntington Bank was entitled to an adjustment of $592,087.81 for avoidable transfers that cycled through Teleservices' Silicon Valley account a second time.  Finally, pre-judgment interest would be awarded at the same rate as that used to calculate post-judgment interest.

Finally, Judge Hughes proposes twenty-three conclusions of law which he recommends this Court adopt.

1.  Teleservices and Cyberco were separate corporations that should be treated as distinct entities for purposes of assessing the avoidability of the subject transfers under Sections 548 and 544(b) and Huntington's liability for the same under Section 550.

2.  The Silicon Valley account, together with all amounts Silicon Valley Bank credited to that account, belonged to Teleservices, not Cyberco.  Consequently, all transfers from that account to either Huntington directly through checks written on that account or to Huntington indirectly through Cyberco's deposits into its Huntington accounts were transfers of Teleservices' property for purposes of Section 548(a) and Mich. Comp. Laws §§ 566.31 and 566.34.

3.  All of the transfers made by Teleservices from the Silicon Valley account directly to Huntington through checks written on that account were made within a year of Teleservices' January 21, 2005 petition for relief.  11 U.S.C. § 548(a)(1).

4.  All of the transfers made by Teleservices from the Silicon Valley account directly to Huntington through checks written on that account were made with the actual intent to hinder, delay, or defraud Teleservices' creditors.  *Cf.* 11 U.S.C. § 548(a)(1)(A) and Mich. Comp. Laws § 566.34(1)(a).

5.  All of the transfers made by Teleservices from the Silicon Valley account directly to Huntington through checks written on that account were made while Teleservices was insolvent and without Teleservices receiving reasonably equivalent value in exchange.  *Cf.* 11 U.S.C. § 548(a)(1)(B) and Mich. Comp. Laws § 566.35(1)

6.  Huntington was the initial transferee of all the checks written by Teleservices to it on the Silicon Valley account.  11 U.S.C. § 550(a)(1).

7.  Huntington, as the initial transferee, did not receive any of those checks for

5

value or in good faith.  11 U.S.C. § 548© and Mich. Comp. Law § 566.38(1).

8.  Section 546(a) does not bar Trustee from seeking the avoidance in this adversary proceeding of the indirect transfers – i.e., the transfers by Teleservices to Cyberco that Cyberco deposited into its Huntington accounts – that she also seeks to recover from Huntington as a Section 550(a)(2) transferee.

9.  All of the transfers made by Teleservices from the Silicon Valley account to Cyberco that Cyberco deposited into its Huntington accounts after January 21, 2004 were made with the actual intent to hinder, delay, or defraud Teleservices' creditors. *Cf.* 11 U.S.C. § 548(a)(1)(A) and Mich. Comp. Laws § 566.34(1)(a).

10.  All of the transfers made by Teleservices from the Silicon Valley account to Cyberco that Cyberco deposited into its Huntington accounts after January 21, 2004 were made while Teleservices was insolvent and without Teleservices receiving reasonably equivalent value in exchange. *Cf.* 11 U.S.C. § 548(a)(1)(B) and Mich. Comp. Laws § 566.35(1).

11.  All of the transfers made by Teleservices from the Silicon Valley account to Cyberco that Cyberco deposited into its Huntington accounts after January 21, 2004 were made with the actual intent to hinder, delay, or defraud Teleservices' creditors. *Cf.* 11 U.S.C. § 548(b) and Mich. Comp. Laws § 566.34(1)(a).

12.  All of the transfers made by Teleservices from the Silicon Valley account to Cyberco that Cyberco deposited into its Huntington accounts after January 21, 2004 were made while Teleservices was insolvent and without Teleservices receiving reasonably equivalent value in exchange. *Cf.* 11 U.S.C. § 544(b) and Mich. Comp. Laws § 566.35(1).

13.  Cyberco was the initial transferee of the Teleservices transfers deposited into Cyberco's Huntington accounts.  11 U.S.C. § 550(a)(1).

14.  Cyberco, as the initial transferee, did not receive any of the transfers for value or in good faith.  *Cf.* 11 U.S.C. § 548© and Mich. Comp. Laws § 566.38(1).

15.  Huntington was the immediate transferee of the Teleservices transfers deposited into Cyberco's Huntington accounts.  11 U.S.C. § 550(a)(1).

16.  Huntington, as the immediate transferee, did not establish its good faith with respect to any of the transfers made after April 30, 2004.  11 U.S.C. § 550(b)(1).

6

17. Huntington, as the immediate transferee, had knowledge of the avoidability of all of the transfers made after September 25, 2003. 11 U.S.C. § 550(b)(1) and *Nordic Village*, 915 F.2d 1049.

18. With the exception of the adjustment to be given for "recycled" transfers, the amount recoverable from Huntington is $72,425,716.42. 11 U.S.C. § 550.

19. The $72,425,716.72 should be reduced by another $592,087.91 to $71,833,628.81 to reflect avoided transfers that had cycled through the Silicon Valley account a second time.

20. Huntington, though, is not entitled to an adjustment for the $4,107,832.13 in preferences the Cyberco trustee has recovered in connection with that case.

21. Prejudgment interest at the federal judgment rate is to be included with respect to all transfers Huntington received after April 30, 2004. *Cf.* 28 U.S.C. § 1961.

22. Post-judgment interest is to be awarded at the federal judgment rate. *Cf.* 28 U.S.C. § 1961.

23. Trustee may be awarded her costs as well.

(Report and Recommendation at 29-33 Page ID 32-36.) For each of these proposed conclusions of law, the Bankruptcy Court has provided a footnote identifying where in the record the relevant analysis of the law and facts occurred.

### III.

The Bankruptcy Trustee filed four objections to the Report and Recommendation. (ECF Nos. 4-6 through 4-13 First Objection Page ID 648-761; ECF Nos. 5-1 through 5-4 Second Objection Page ID 763-809; ECF Nos. 5-4 through 5-5 Third Objection Page ID 810-27; ECF No. 5-5 through 5-6 Fourth Objection Page ID 828-48.) Huntington Bank filed a response to the Trustee's objections. (ECF Nos. 6-1 through 6-3 Page ID 1250-1335.)

The Bankruptcy Court issued thorough and detailed opinions. As evidenced by his lengthy

discussions of facts and law, Judge Hughes carefully considered the evidence presented and the arguments advanced throughout the course of the adversary proceeding.  Generally, but not exclusively, the parties have relied on the *de novo* standard and advance the same arguments they presented to the Bankruptcy Court.

### A.  Trustee's First Objection - *Stern*

The Trustee's first objection raises issues related to the August 17 *Stern* Opinion.  First, the Trustee argues Huntington Bank forfeited or waived its right to challenge the Bankruptcy Court's authority to resolve the fraudulent transfer claims.  Second, the Trustee argues the Bankruptcy Judge erred in concluding that it did not have the constitutional authority to decide and enter a final judgment on the fraudulent conveyance claim.  As part of its response to these objections, Huntington Bank argues the Bankruptcy Court's conclusion that *Stern* applies is not properly part of the Report and Recommendation.

The objection is OVERRULED.  The Bankruptcy Court resolved this matter in an opinion issued on August 17, 2011.  (*Stern* Opinion ECF Nos. 2-1 and 2-2.)  Initially, the Court agrees with Huntington Bank that the August 17, 2011, decision of the Bankruptcy Court, the opinion addressing the *Stern* issue, is not properly part of the Report and Recommendation and is not subject to objections at this point.  In the Report and Recommendation, Judge Hughes explicitly incorporated findings of fact and conclusions of law from the Bifurcated Issued Opinion and the Bench Opinion.  He did not, however, explicitly incorporate the August 17 *Stern* Opinion in which he concluded that he lacked the constitutional authority to issue a judgment on the fraudulent transfer claim.  Therefore, there is no finding of fact or conclusion of law in the Report and Recommendation addressing the constitutional authority of the Bankruptcy Court to

which the Trustee can object.

The Trustee failed to file a proper appeal of the August 17 *Stern* Opinion. On the assumption that the August 17 *Stern* Opinion was an interlocutory order, the Trustee could have appealed the August 17 *Stern* Opinion by filing a request for leave to appeal with this Court. *See* 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8001(b). If the August 17 *Stern* Opinion was subject to the collateral order doctrine as an otherwise unappealable order, because no final order would be issued by the Bankruptcy Court, *see Coopers & Lybrand v. Livesay*, 437 U.S. 511, 525 (1985), then the Trustee could have appealed under § 158(a)(1). In either case, as an interlocutory appeal or as an appeal of right, the time to file the appeal has expired. Fed. R. Bankr. P. 8002(a).

Even if the Trustee's objection to the August 17 *Stern* Opinion may be considered, the Court finds the objection without merit. Judge Hughes' analysis of *Stern* is sound. The Court also finds support for Judge Hughes' conclusion in an opinion issued after the Report and Recommendation was issued. *See Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012) ("But when a debtor pleads an action arising only under state-law, as in *Northern Pipeline*; or when the debtor pleads an action that would augment the bankrupt estate, but not 'necessarily be resolved in the claims allowance process[,]' 131 S.Ct. at 2618; then the bankruptcy court is constitutionally prohibited from entering final judgment. *Id*. at 2614."). Notably, Huntington did not file a proof of claim in the adversary proceeding. *Cf., In re Global Technovations Inc.*, 694 F.3d 705, 722 (6th Cir. 2012) (finding that the bankruptcy court had constitutional authority to adjudicate the fraudulent-transfer issue because the party had filed a proof of claim against estate, thus voluntarily bringing itself into the jurisdiction of the bankruptcy court).

## B. Trustee's Second Objection – Subjective Standard

The Trustee objects to the portion of the Bankruptcy Court's March 17, 2011, Bifurcated Issues Opinion applying a subjective standard to Huntington Bank's § 548 and § 550 good faith defenses.

The objection is OVERRULED. The Bankruptcy Court addressed Huntington Bank's good faith defense in its March 17, 2011, Bifurcated Issues Opinion.

Judge Hughes began his analysis of Huntington Bank's good faith defense by acknowledging that the trend in the federal circuit courts was to employ an objective standard. The objective standard has not been explicitly adopted by the Sixth Circuit, and the Sixth Circuit has, at least implicitly, endorsed a good faith standard that allows for subjective considerations. (Bifurcated Issues Opinion ECF No. 3-3 at 46-48 n.114 Page ID 221-23.) The Court finds Judge Hughes accurately assessed the relevant standards for determining a good faith defense. His dissection of the prevailing trend toward an objective standard of good faith reads like an academic treatise. The Trustee's objection does not demonstrate any dispositive flaw in Judge Hughes' reasoning. Furthermore, the phrase "good faith" is used multiple times in § 548 through § 550. In § 548© and § 550(e)(1), the phrase "good faith" is used without any additional reference to the knowledge of the transferee or obligee. In § 549© and § 550(b)(1), the phrase "good faith" is used with an additional reference to some knowledge. (*See* Bifurcated Issues Opinion ECF No. 3-4 at 71-73 Page ID 246-48.)

## C. Trustee's Third Objection – April 30, 2004

The Trustee objects to the determination that Huntington Bank acted in good faith prior to April 30, 2004. The Trustee argues that regardless of whether an objective or a subjective standard is used, the evidence establishes that Huntington Bank no longer acted in good faith beginning on October 2, 2003.

The objection is OVERRULED. The Bankruptcy Court addressed the application of the good faith standard to the facts of the case in its Bifurcated Issues Opinion.

To be clear, the Trustee's objection is to a legal conclusion, not a factual one. The parties do not dispute the facts as set forth in the Bifurcated Issues Opinion; the parties dispute the legal significance of the facts. The Bankruptcy Judge selected April 30, 2004, as the date when Huntington Bank could no longer meet the good faith standard because that was the date its regional security officer, Larry Rodriguez, learned that there were outstanding judgments against Watson for, among other things, bank fraud. (Bifurcated Issues Opinion ECF No. 3-2 at 25 Page ID 200, ECF No. 3-5 at 97 Page ID 272 and at 102 Page ID 277.) Judge Hughes was explicitly skeptical of the approach advocated by the Trustee, where Huntington Bank's good faith would be assessed by the amalgamation of the knowledge of all of its employees and agents. (*Id.* at 103 Page ID 278.) Finally, contrary to what the Trustee argues, the record supports the conclusion that Huntington Bank complied with its own policy and procedures for the investigation, in addition to complying with the relevant statutes and regulations. (*See* Huntington Resp. To Objection ECF No. 6-3 at 55-59 Page ID 1317-21). The Court finds Judge Hughes' legal conclusion sound and well supported by the facts.

### D. Trustee's Fourth Objection - Prejudgment Interest

The Trustee's fourth objection addresses the Bankruptcy Court's recommendations for prejudgment interest, but only for transfers after April 30, 2004. This objection addresses proposed conclusion of law number 21.

This objection is OVERRULED. The Court addressed this issue in at least two opinions. In its March 30, 2012, Opinion, the Bankruptcy Court concluded that prejudgment interest should be awarded

11

for transfers after April 30, 2004. (March 30, 2012, Opinion ECF No. 2-7 at 85-88 Page ID 167-69). In its July 23, 2012, Bench Opinion, the Bankruptcy Court concluded that prejudgment interest should be calculated at the post-judgment interest rate set forth in 28 U.S.C. § 1961. (July 23, 2012, Bench Opinion ECF No. 3-7 at 42-47 Page ID 344-47).

It is obvious from the two opinions that the Bankruptcy Court labored to reach the outcome on this issue. Judge Hughes reached two conclusions, which the Trustee's objection does not undermine. First, the party being awarded interest is the estate, not the estate's creditors. The decision to award interest, and the rate of interest, should not be determined or calculated by what the creditors might have done with the funds. Following this logic, the Trustee's argument that the federal post-judgment interest rate insufficiently compensates the injured party, *see United States v. City of Warren*, 138 F.3d 1083 (6th Cir. 1998), fails. Second, § 550(a) provides that a trustee may recover property transferred or the value of such property. Judge Hughes found no reason to treat the transferred property here in a manner different from the transferred property in other cases. Because the transferred property, in this case money, can be returned, the statute does not require that the value of the transferred property be returned. Judge Hughes also concluded that prejudgment interest would only be awarded on those transfers that occurred after Huntington Bank lost its good faith defense. Only at that point did Huntington Bank share responsibility for the voidable transfers.

## IV.

Huntington Bank makes objections to both the Bankruptcy Court's proposed findings of fact and the proposed conclusions of law. (ECF No. 5-7 Page ID 849-1019.) The Trustee filed a response to Huntington Bank's objections. (ECF Nos. 6-6 through 6-16 Page ID 1368-1606.)

### A. Huntington Bank's Objections - Proposed Findings of Fact

### 1. Objection 1 - Inadequate findings of fact regarding Cyberco Holdings' use of the funds received from the Silicon Valley Bank account

Huntington Bank objects to the lack of factual findings concerning how the funds deposited in Cyberco Holdings' accounts at Huntington Bank were used, citing the Bifurcated Issues Opinion at pages 6 and 24 and the July 23 Bench Opinion at 8. Huntington urges the Court to adopt fifteen proposed findings of fact, several with subdivisions. Huntington argues the findings of fact made by the Bankruptcy Court were "incomplete, misleading, and inaccurate." (Huntington Bank Obj. ECF No. 5-7 at 14 Page ID 878.) In its response, the Trustee concedes that many of Huntington's proposed findings of fact are accurate, but argues that the facts are without legal significance.

The objection is OVERRULED. First, in this section, Huntington Bank has not explained why the factual findings of the Bankruptcy Court are incomplete. Absent a clear explanation about how the propose facts alter any of the proposed legal conclusions, making additional factual findings would be unnecessary. Also, Huntington Bank has not clearly established that the proposed findings of fact are indisputable. Although there may be evidence in the record to support these facts, Huntington Bank has not excluded the possibility that other evidence in the record would create some dispute. The Court will not scour the record for such a purpose. Second, Huntington Bank has not established, or event attempted to establish, that the Bankruptcy Court's findings of fact were either misleading or inaccurate.

### 2. Objection 2 - Inadequate findings of fact regarding Huntington Bank's good faith defense

Huntington Bank objects the Bankruptcy Court's failure to make certain findings of fact about Huntington Bank's good faith defense. Huntington Bank proposes forty findings of fact and requests the

13

Court make those findings.

This objection is OVERRULED.  Huntington Bank has not identified any specific portion of the Report and Recommendation or any of the incorporated opinions to which this objection would apply.  The Court will not scour the voluminous documents in an effort to determine where these proposed findings allegedly should have been made.  Like the proposed facts above, while these propose facts might have support in the record, Huntington Bank has not demonstrated that these proposed facts are undisputed.  Like the proposed facts above, in this section of its objections, Huntington Bank has not explained why these additional facts are necessary or material or would otherwise alter the outcome of the proceeding.

### 3.  Objection 3 - Erroneous Findings of Fact

Huntington Bank identifies twenty-five statements in the Bifurcated Issues Opinion and six statements in the July 23 Bench Opinion that it alleges are erroneous statements.

This objection is OVERRULED.  Most of these objections do not address material facts or otherwise would not alter the outcome of the adversary proceeding. For example, Huntington Bank objects to language in a footnote about shady customers and overdrafts.  But the Bankruptcy Court did not say that all bank customers that have an overdraft are shady, so the objection that overdrafts are common does not affect any material fact or even bear on whether Cyberco Holdings was "shady." Other objections are largely semantic disputes. For example, the Trustee objects to the use of the adjective "obvious." Still other objections to the proposed findings are based on objections to proposed conclusions of law.  For example, if Teleservices is not a separate entity, then many of the Bankruptcy Court's statements about what Teleservices did would be factual misstatements.

### B.  Huntington Bank's Objections - Proposed Conclusions of Law

### 1.  Objection 1 - Relationship between Teleservices and Cyberco

Huntington Bank objects to proposed conclusions of law 1 and 2.  First, Huntington Bank argues Teleservices Group was merely an instrumentality and alter ego of Cyberco Holdings.  Second, Huntington Bank argues the Silicon Valley Bank account could not be owned by Teleservices Group for the same reason, the two entities were not distinct.

This objection is OVERRULED.  This issue, the existence of Teleservices Group as a legal entity, was litigated extensively as part of the adversary proceeding.  Judge Hughes addressed the issue as early as September 25, 2009, in his bench opinion resolving the Trustee's motion for partial summary judgment.  (September 25, 2009, Bench Opinion ECF No. 4-3 at 17-20 Page ID 497-500.)  Judge Hughes correctly concluded that Teleservices Group was a legal entity that continued to exist even after it lost its good standing for failure to pay taxes.  Judge Hughes addressed Huntington Bank's additional arguments in his March 30, 2012, Opinion resolving the Trustee's motion for summary judgment.   (March 30, 2012, Opinion at 14-19 Page ID 96-101.)  Judge Hughes explained why Watson's fraudulent scheme required the existence of two companies.  There exists some dispute about whether Teleservices Group had a president or board of directors.  However, Judge Hughes correctly explained why equity required the Bankruptcy Court to conclude that Teleservices Group was separate entity and that Teleservices Group owned the funds in the Silicon Valley Bank account.  Finally, Huntington Bank cannot succeed on its alter ego argument because it has not suffered any unjust loss or injury.  Huntington Bank asserts the alter ego argument so that it can avoid liability.

### 2. Objection 2 - Cyberco Holdings as a creditor of Teleservices Group

Huntington Bank objects to proposed conclusions of law 9 through 12. These four proposed conclusions of law relate to the transfers of funds by Teleservices Group to Cyberco Holdings after January 21, 2004. Huntington Bank argues Cyberco Holdings was a creditor of Teleservices Group because Teleservices Group did not deliver the compute equipment to Cyberco Holdings. If the transfer was not fraudulent, the Huntington Bank cannot be liable as a subsequent transferee..

This objection is OVERRULED. Huntington Bank's argument was considered and rejected by the Bankruptcy Court. Judge Hughes discussed in much detail the three cases cited by Huntington Bank and persuasively explained why the three opinions did not support Huntington Bank's conclusion. (March 30, 2012, Opinion ECF No. 2-6 at 69-79 Page ID 151-61.) The objection here does not undermine the Bankruptcy Court's well-reasoned conclusion.

### 3. Objection 3 - Deposits are not transfers

Huntington Bank objects to proposed conclusion of law 15. Huntington Bank insists it cannot be an immediate transferee simply because one of its customers made a deposit into an account at the bank. The Bank Associations address this same issue in their amicus brief. (ECF No. 30.)

The objection is OVERRULED. The Bankruptcy Court addressed this conclusion of law in multiple opinions.[1] (October 7, 2009, Bench Opinion ECF No. 4-4 at 7-26 Page ID 583-602; Bifurcated Issues Opinion ECF No. 3-2 at 38-41 Page ID 213-15; March 30, 2012, Opinion ECF No. 2-4 at 33-40 Page ID 115-22 and ECF No. 2-5 at 41-55 Page ID 123-37.) The question is whether a bank's ability

---

[1]The Bankruptcy Court most in-depth discussion of the issues occurred in its March 30, 2012, Opinion.

to use the funds deposited in a customer's account constitutes sufficient control that, for the purpose of the Bankruptcy Code, a transfer of funds has occurred. Put another way, does the customer's rights to the funds in its account constitute sufficient control over those funds that no transfer to the bank occurred?

This issue was obviously problematic for the Bankruptcy Court. Judge Hughes conceded that "*Bonded Financial* and other courts have determined that the mere deposit of an avoided transfer does not make the depository bank accountable as a subsequent transferee under Section 550(a)(2)."[2] (March 30, 2012, Opinion ECF No. 2-4 at 34 Page ID 117.) Judge Hughes then explained, at some length, why he found that conclusion erroneous. Having reviewed the relevant authority, this Court generally agrees with the Bankruptcy Court; none of the binding authority from the Sixth Circuit addresses whether a bank accepting a transfer of funds from a third party to one of its customers' accounts becomes an immediate or subsequent transferee. Looking at passages in the persuasive authority cited by Huntington Bank and the Bank Associations, the easiest solution would be to conclude that those cases reject the conclusion that a bank can be a subsequent transferee by receiving a deposit in a customers' account. But the easiest solution is not necessarily the correct one. Here, Judge Hughes has carefully scrutinized the opinions, drew

---

[2]Since the parties submitted their briefs, the Eleventh Circuit issued another opinion in which it concluded that a bank is not an initial transferee of funds simply because it receives funds as a deposit. *In re Custom Contractors, LLC*, 745 F.3d 1342, 1350 (11th Cir. 2014). The relevant passage of *Custom Contractors*, however, merely summarized the holding in *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196 (11th Cir. 1988). Although the discussion in *Society Generale* appears helpful to Huntington Bank, the facts in that case were sufficiently different to undermine application to the facts here and Judge Hughes' reasoning. In *Societe Generale*, the bank honored a check from its customer, even though the customer did not have sufficient funds, which created an overdraft. The bank honored the check only after assurances from another financial institution that money had been wired to the bank for deposit in the customer's account. This factual situation explains why Judge Hughes dismissed the case as addressing the bank as an initial transferee. (March 30, 2012, Opinion ECF No. 2-5 at 53 Page ID 135.)

important distinctions between those opinions, and explained why a bank does exercise control over funds in its customers' accounts such that the bank is a subsequent transferee under the relevant portions of the Bankruptcy Code.

Huntington Bank's objections are not persuasive. First, the October 7, 2009, Bench Opinion and the March 30, 2012, Opinion are not inconsistent. The portion of the October 2009 opinion quoted by Huntington Bank addresses the bank as the initial transferee. The Bankruptcy Court concluded that Huntington Bank was the immediate or subsequent transferee. (October 7, 2009, Bench Opinion ECF No. 4-4 at 24-26 Page ID 600-02.) Second, the Bankruptcy Court explained why the opinions on which Huntington Bank relies, *New York County National Bank v. Massey*, 192 U.S. 138 (1904) and the cases from the Sixth Circuit, are not binding authority. Third, the Bankruptcy Court explained why the Seventh Circuit's opinion in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988) erred when the panel discussed a bank as a transferee, distinguishing between acceptance of the deposit and use of the deposit for its own ends. As noted by the Trustee in the post-hearing brief, this is not a novel concept and other courts have concluded that a deposit into a bank account constitutes a transfer. (Trustee Post-Hearing Br. at 9 n.13 Page ID 6024 and at 10 Page ID 6025.) This Court agrees with the Bankruptcy Court's analysis and conclusion.

### 4. Objection 4 - Value of deposits

Huntington Bank objects to proposed conclusion of law 18. The Bankruptcy Court recommends that the Trustee be able to recovery $72,425, 716.42. Huntington Bank argues that the Bankruptcy Court failed to assign a value to the deposits. Huntington Bank reasons that the time value of the deposit is not the same as the face value of the deposit.

This objection is OVERRULED.  The Bankruptcy Court adequately explained why it reached the proposed conclusion of law.  (March 30, 2012, Opinion ECF No. 2-5 at 55-60 Page ID 137-42 and ECF No. 2-6 at 61-68 Page ID 143-50.)  The Court finds no fault with the reasoning.  Furthermore, as explained by the Trustee in the response to the objection, the value of the transferred property is measured by the value of the property to the bankruptcy estate.  The value of the transferred property is not measured by the benefit received by the transferee.

### 5.  Objection 5 - Good faith

Huntington Bank objects to proposed conclusions of law 7 and 16.  Huntington Bank argues it was not an initial transferee simply because a deposit was made into a customer's account.  Huntington Bank also argues that all of the deposits were taken with good faith and without knowledge of the voidability of the transfer.

This objection is OVERRULED.  Whether a deposit constitutes a transfer to the bank was discussed as part of the third objection.  The Bankruptcy Court addressed its findings for the good faith defense in thorough detail in the Bifurcated Issues Opinion.  The Court agrees with the assessment and conclusion of the Bankruptcy Court.

### 6.  Objection 6 - Knowledge of avoidability

Huntington objects to the proposed conclusion of the 17.  Huntington Bank argues the Bankruptcy Court misinterpreted *IRS v. Nordic Village*, 915 F.2d 1049 (6th Cir. 1990), *rev'd in part sub nom. United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992).

This objection is OVERRULED.  The Bankruptcy Court addressed this issue in its Bifurcated Issues Opinion.  (Bifurcated Issues Opinion ECF No. 3-5 at 105-12 Page ID 280-87 and ECF No. 3-6

at 113-22 Page ID 288-97.) Having read *Nordic Village*, the Bankruptcy Court's opinion, and the objection and response, the Court finds Judge Hughes' discussion of Sixth Circuit law, and the application of the facts to that law, persuasive.

### 7. Objection 7 - Cyberco Holdings as a party to the adversary proceeding

Huntington Bank objects to proposed conclusions of law 8 through 14. Huntington Bank argues the Trustee should have sued Cyberco Holdings. Huntington Bank argues Cyberco Holdings was the initial transferee of the deposits. Because the Trustee did not sue Cyberco Holdings, Huntington Bank reasons that the Trustee should not be allowed to recover transfers from Huntington Bank as a subsequent transferee.

This objection is OVERRULED. The Bankruptcy Court addressed this issue in its October 7, 2009, Bench Opinion. (October 7, 2009, Bench Opinion ECF No. 4-4 at 32-53 Page ID 608-29.) In its objection, Huntington Bank implicitly acknowledges that there is no binding precedent that required the Trustee to join Cyberco Holdings as a party to the adversary proceeding. The Bankruptcy Court concluded that the Bankruptcy Code and the Bankruptcy Rules did not require the Trustee to join Cyberco Holdings as a party. While Huntington Bank's objection outlines reasons why it might be preferable to join Cyberco Holdings, that conclusion does not undermine the Bankruptcy Court's interpretation and application of the Code and Rules.

### 8. Objection 8 - Cyberco Holdings' payments to finance companies

Huntington Bank objects to proposed conclusion of law 18. Huntington Bank argues that $27,957,000 of the funds deposited into the Cyberco Holding accounts with Huntington Bank were paid to the financing companies which were defrauded. Huntington Bank reasons that it cannot be held liable

for funds already returned to Teleservices Group's creditors.

This objection is OVERRULED. The Bankruptcy Court addressed this argument at part of its March 30, 2012, Opinion. In that opinion, the Bankruptcy Court discussed several of the cases cited by Huntington Bank. (March 30, 2012, Opinion ECF No. 2-5 at 55-60 Page ID 137-42 and ECF No. 2-6 at 61-68 Page ID 143-50.) Huntington Bank's objection does not consider or otherwise address the fact that the funds were not returned to Teleservices Group. Instead, as noted by Judge Hughes, the funds were paid to creditors resulting in an inequitable distribution favoring earlier creditors over later creditors. (March 30, 2012, Opinion ECF No. 2-6 at 66 Page ID 148.) The Court finds the Bankruptcy Court's analysis of the facts and the law persuasive.

### 9.   Objection 9 - Cyberco Holdings trustee preference recoveries

Huntington Bank objects to proposed conclusion of law 20. Huntington Bank argues it should be entitled to an adjustment for the funds deposited in Cyberco Holdings' account and spent by Cyberco, but later recovered as preferential transfers by the Cyberco Holdings Trustee.

This objection is OVERRULED. The Bankruptcy Court addressed this issue in its July 23, 2012, Bench Opinion. (July 23, 2012, Bench Opinion ECF No. 3-7 at 31-33 Page ID 333-35.) The Bankruptcy Court concluded that Huntington Bank waited too long to raise the issue. The Court agrees.

### 10.   Objection 10 - Late amendments to the complaint

Huntington Bank objects to proposed conclusion of law 18. More specifically, Huntington Bank objects to the decision of the Bankruptcy Court to allow the Trustee to amend the complaint after the first phase of the trial to include an additional transfers to be included. Huntington Bank argues the motion to amend should have been governed by Rule 15(b), not 15(a), and should have been denied.

This objection is OVERRULED.  The Bankruptcy Court decided this issue on September 8, 2011, and issued a bench opinion.  Unlike the August 17 *Stern* opinion, in September 8 Bench Opinion, Judge Hughes explicitly stated that the opinion would be incorporated into the Report and Recommendation. (September 8, 2011 Bench Opinion ECF No. 3-8 at 10 Page ID 385.)  The arguments raised as part of this objection were first presented to the Bankruptcy Court in opposition to the Trustee's motion to amend. The Bankruptcy Court adequately addressed each of those arguments.  Having reviewed the objection *de novo*, the Court agrees with the Bankruptcy Court that Rule 15(a)(2) governed the motion and that justice required the court to allow the amendment.

### 11.  Objection 11 - Prejudgment interest

Huntington Bank objects to proposed conclusion of law 21.  Huntington Bank reasons, assuming that bankruptcy courts have the power to award prejudgment interest, that such interest should not be awarded in novel situations like this one.

This objection is OVERRULED.  The portions of the Bankruptcy Court's opinions on this issue are identified above in the portion of this opinion addressing the Trustee's objection to prejudgment interest. The Court notes that Huntington Bank's objection omits any discussion of the distinction made by Judge Hughes between transfers before April 30, 2004, and transfers after April 30.  The Bankruptcy Court's decision to exercise its equitable powers were limited to awarding interest on transfers occurring after Huntington Bank had sufficient information that it should have known about the fraud.

### V.

This Court has conducted a *de novo* review of the specific objections to the Report and Recommendation issued by the Bankruptcy Court.  The objections asserted by both the Trustee and by

Huntington Bank are overruled. Court finds the reasoning in the Report and Recommendation sound and the proposed findings of fact and conclusions of law well supported.

## ORDER

Consistent with the Opinion above, the Report and Recommendation (ECF No. 1-1) issued on August 1, 2012, is **ADOPTED** as the opinion of this Court. This resolves all pending claims in this case and judgment shall be issued contemporaneously. **IT IS SO ORDERED.**

Date:   September 28, 2015                              /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge